$250.00



**NS**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE BLAYLOCK<br>　　　　Plaintiff<br>　　vs.<br>THE CITY OF PHILADELPHIA, PHILADELPHIA POLICE OFFICER REYNOLDS, BADGE # 4268; PHILADELPHIA POLICE OFFICER WALKER, BADGE # 3730; PHILADELPHIA POLICE OFFICER CUJDIK, BADGE # 1574; PHILADELPHIA POLICE OFFICER LICIARDELLO, BADGE # 4383; PHILADELPHIA POLICE SERGEANT: MALKOWSKI, BADGE # 8832, PHILADELPHIA POLICE OFFICER DOES 1-5, BADGE NUMBERS UNKNOWN, individually and in their capacity as police officers<br>　　　　Defendants | JURY TRIAL<br>DEMAND<br><br>C.A. #05-1649<br><br>**FILED**<br>APR 11 2005<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

## COMPLAINT

### I. JURISDICTION

1. This action is brought pursuant to 42 U.S.C. §§ 1331 and 1343(1),(3),(4) and the aforementioned statutory provision.

### II. PARTIES

2. Plaintiff, Andre Blaylock is an adult male who was at all times relevant to its Complaint, a resident of Philadelphia, Pennsylvania.

3. Defendant City of Philadelphia is a City of the First Class in the Commonwealth of Pennsylvania and at all times relevant hereto operated under the color of state law in creating and maintaining a Police Department, was the employer of all Defendants and had the responsibility of adopting policies, implementing

procedures and practices which would create an environment whereby citizens would be safe from police abuse.

4. Defendant Reynolds, Badge number 4268, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

5. Defendant Walker, Badge number 3730, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

6. Defendant Cujdik, Badge number 1574, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

7. Defendant Liciardello, Badge number 4383, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

8. Defendant Malkowski, Badge number 8832, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

9. Defendant John Does #1-5, Badge numbers unknown, are and were at all times relevant to this Complaint, police officers for the City of Philadelphia and are acting under the color of state law. They are being sued in both their individual and official capacities.

**III. FACTS**

10. On or about October 7, 2003 Defendant Reynolds allegedly received information from a confidential informant that Dana Blaylock and Omar Blaylock (cousins) were selling narcotics on the highway of the 500 block of North 38th Street.

11. The informant further stated that Dana and Omar Blaylock were storing narcotics at three different locations in and around the 500 block of 38th Street.

12. The Defendants conducted record checks for both Dana and Omar Blaylock. Both record checks revealed prior criminal records of both the above individuals.

13. As a direct result of the confidential informant's information and the Defendants records check, Defendants conducted surveillance of both Dana and Omar Blaylock in and around the 500 block of North 38th Street. (A copy of the affidavit of probable cause is attached hereto as Exhibit "1".)

14. On October 7, 2003 Defendants allegedly observed Dana Blaylock and Omar Blaylock engage in numerous narcotic transactions.

15. At approximately 4:45 p.m. Defendant Cujdik met and debriefed a confidential informant on making a narcotics purchase from Dana and Omar Blaylock. At that time and date, according to the affidavit of probable cause, the confidential informant gave money to Dana Blaylock whereby Omar Blaylock retrieved narcotics and handed the confidential informant two (2) red tinted ziplock packets which were later confirmed to be crack cocaine.

16. On October 21, 2003 Defendants Walker and Cujdik met with a confidential informant. According to the affidavit of probable cause, at approximately 2:30 p.m.

the informant made a narcotics buy of two (2) red tinted packets of crack cocaine from Omar Blaylock.

17. At no time during any of the surveillance was Plaintiff Andre Blaylock observed engaging in any criminal activity. Plaintiff Andre Blaylock is never mentioned by any confidential source as an individual engaged in any illicit activity.

18. On October 22, 2003 as a direct result of the information provided by the confidential informant, the narcotic buys made by the confidential informant[s] and the surveillance conducted by the Defendants, Defendant Walker provided all of the foregoing information to a magistrate and obtained search warrants for 522 N. 38th Street, 524 N. 38th Street and 3706 Brandywine Street.

19. On October 22, 2003 as he was sitting on his aunt's doorstep when without warning, cause or justification, Plaintiff Andre Blaylock was arrested by Defendants Reynolds and Liciardello.

20. Defendants handcuffed Plaintiff, threw him on the ground and began kicking and punching him in the face. Plaintiff never resisted.

21. When arrested Plaintiff was in possession of $28.00 dollars. No narcotics or contraband was confiscated from him.

22. Plaintiff was transported to the 16th District where he remained in custody for 4 to 5 hours before he was transported to 55th and Pine.

23. After repeatedly complaining about his injuries as a result of the assault by the Defendants, Plaintiff was eventually transported to Miscercordia Hospital for treatment of his injuries.

24. After treatment at the hospital, Plaintiff was transported back to 55th and Pine where he was incarcerated for approximately 18 hours before being transported to Curran-Fromhold Correctional Facility.

25. Plaintiff's bail was set at $20,000 dollars.

26. Immediately following the arrest of Plaintiff, Dana Blaylock and another individual, Sarkui Wallace, Defendants prepared an Investigation Report. (A copy of the Philadelphia police Department Investigation Report is attached hereto as Exhibit "2".)

27. In the Investigation Report, other than the information provided by the confidential informant that Dana and Omar Blaylock were selling narcotics on the 500 block of North 38th Street and the records check of Dana and Omar Blaylock, nowhere else in the report does it mention Omar Blaylock. Instead, the Investigation Report, which is almost identical to the affidavit of probable cause, substitutes the name of Andre Blaylock for Omar Blaylock.

28. Omar Blaylock was never arrested by Defendants. In fact Omar Blaylock was incarcerated at the time of the surveillance and the arrests. This fact was never disclosed to the magistrate after doing a records check of Omar Blaylock in anticipation of attesting to Omar Blaylock's criminal conduct in the affidavit of probable cause.

29. Plaintiff in fact was never present during the observations allegedly made by Defendants of Plaintiff engaging in criminal activity as represented in the Investigation Report. On October 21, 2003 when Defendants Walker and Cujdik allegedly observe a confidential informant buy crack cocaine from Omar Blaylock

(according to the affidavit of probable cause) or Andre Blaylock (according to the Investigation Report), Plaintiff was attending a financial aid appointment for his enrollment at the Aviation Institute of Maintenance and could not have been observed by Defendants selling narcotics.

30. As a direct result of his arrest Plaintiff was charged with narcotic related crimes.

31. Plaintiff was incarcerated from October 22, 2003 until February 14, 2005 before all charges were dismissed.

32. The foregoing conduct of the Defendants, acting under the color of state law, was undertaken in concert and conspiracy and as part of an effort to assault, unlawfully arrest and imprisoned Plaintiff, maliciously prosecute and otherwise deprive Plaintiff of his civil and constitutional rights including Plaintiff's rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania.

33. At no time did Plaintiff commit any offense against the laws of the Commonwealth of Pennsylvania for which an arrest may be lawfully made. At no time did Plaintiff strike, attempt to strike or intend to strike any of the Defendant police officers or any other police officer. At no time did Plaintiff harass, threaten, resist arrest in any way, commit any illegal acts or engage in any conduct, which in any way justified the actions of all Defendant police officers.

34. As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional distress, and pain and suffering, some or all of which may be permanent.

35. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered and continues to suffer damage to his personal and business reputation.

36. As a direct and proximate result of the Defendants' actions, Plaintiff was assaulted, arrested, detained, subjected to verbal abuse, searched and imprisoned, maliciously prosecuted, all these acts done without just or probable cause and with the sole intent of covering up their lack of probable cause and misrepresent facts to the authorities.

37. At no time did Plaintiff pose a threat to Defendants or to others.

38. The actions of Defendants were undertaken in a menacing and arbitrary manner, designed to cause Plaintiff fear, distress and embarrassment.

39. The acts of Defendants were committed willfully, wantonly, maliciously, intentionally, outrageously, deliberately and/or by conduct so egregious as to shock the conscience.

40. The acts and omissions of the undivided Defendants were committed without cautious regard to due care, were committed to mislead and/or misrepresent facts in order to establish probable cause and with such wanton and reckless disregard of the consequences as to show Defendants' indifference to the danger of harm and injury.

41. The individual Defendants conspired to inflict harm on Plaintiff and deprive him constitutional rights.

42. Defendants made statements to police in order to conceal their unlawful and unconstitutional conduct.

43. Defendants engaged in the aforesaid conduct for the purpose of violating Plaintiff's constitutional rights by subjecting him to unreasonable search and seizure,

subjecting him to an unreasonable use of force, depriving Plaintiff of property and liberty without due process of law, subjecting Plaintiff to excessive bail, malicious prosecution and unlawfully arresting him.

44. As a direct and proximate result of the Defendants' illegal and unconstitutional actions, Plaintiff suffered pain, fear, anxiety, embarrassment, loss of liberty, confinement, physical injuries, severe emotional trauma, and the loss of the enjoyment of life, all to his great detriment and loss.

45. As a direct and proximate cause of the Defendants' illegal and unconstitutional actions, Plaintiff suffered and continues to suffer financial loss and deprivation of other liberty interests to his great financial detriment and loss.

## FIRST CAUSE OF ACTION
## FEDERAL CIVIL RIGHTS VIOLATIONS

46. The allegations set forth in paragraphs 1-45 inclusive, are incorporated herein as if fully set forth.

47. As a direct and proximate result of Defendants' above described unlawful and malicious conduct, committed under the color of state law, and while acting in that capacity, the Defendants deprived Plaintiff of the equal protection of the laws and Plaintiff's rights, privileges and immunities under the laws and the Constitution of the United States. Plaintiff's right to be free from unreasonable searches and seizures, free from excessive use of force, false arrest, false imprisonment, malicious prosecution to be secure in one's person and property, to access to the Courts, and to due process and equal protection of the law, all to plaintiff's great detriment and loss. As a result, Plaintiff suffered grievous harm, in violation of his rights under the laws

and Constitution of the United States in particular the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

48. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff was forced to endure great pain and mental suffering, and was deprived of physical liberty, all to Plaintiff's great detriment and loss.

49. The City of Philadelphia permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:

    a. Unjustified, unreasonable and illegal use of process by police officers;

    b. Abuse of police powers, including excessive use of force, false arrest, malicious prosecution, harassment and improper searches;

    c. Misrepresenting facts in order to establish probable cause where none would otherwise exist;

    d. Arresting and incarcerating citizens without probable cause solely for the purpose of committing citizens to prison with no intention of seeking criminal prosecutions;

    e. Psychologically or emotionally unfit persons serving as police officers; and

    f. Failure of police officers to prevent, deter, report or take action against the unlawful conduct of police officers under such circumstances as presented herein.

50. Defendant, City of Philadelphia was deliberately indifferent to the need to:

    a. Test its officers for emotional and psychological fitness to serve as police officers;

    b. Monitor officers whom it knew or should have known were suffering from emotional and/or psychological problems that impair their ability to function as police officers;

    c. Train its police officers in the appropriate exercise of police powers;

    d. Facilitated, encouraged, tolerated, ratified, and/or was deliberately indifferent to officers using their status as police officers to have persons falsely arrested, assaulted and maliciously prosecution or to achieve ends not reasonably related to their police duties; and

    e. Failure to properly train, supervise and discipline officer officers with regard to such police practices.

51. The City of Philadelphia was deliberately indifferent to the need for more or different training, supervision, investigation or discipline in the areas of:

    a. Use of information in obtaining probable cause;

    b. Exercise of police powers;

    c. Police officers with emotional or psychological problems;

    d. Police officers use of their status as police officers to have persons falsely arrested, assaulted and maliciously prosecution and unlawfully searched or to achieve ends not reasonably related to their police duties; and

    e. False arrest, malicious prosecution and evidence planting of citizens.

52. The City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other police officers, thereby causing and encouraging police officers,

including the Defendant police officers in this case, to violate the rights of citizens such as Plaintiff.

53. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger or harm to citizens like the Plaintiff and the need for more or different training, investigation and discipline are policies and customs of the City of Philadelphia and have caused police officers, including Defendant police officers in this case, to believe that they can violate the rights of citizens, with impunity, including the use of fraud and falsehood and to believe that such conduct would be honestly and properly investigated, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

54. The actions of all Defendants, acting under the color of state law and/or in concert or conspiracy with each other, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the rights to be secure in one's person and property, to be free from unlawful searches, from false arrest, malicious prosecution and to due process of law.

55. Defendants, City of Philadelphia and the individual named Defendants, acting in concert and conspiracy with each other, have by the aforementioned actions deprived Plaintiff of his constitutional and statutory rights.

56. By these actions, all Defendants have deprived Plaintiff of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

## PUNITIVE DAMAGES

57. Plaintiff re-alleges paragraphs 1-56 of this complaint as though fully set forth herein.

58. The conduct of the individual Defendants was outrageous, malicious, wanton, willful, reckless and intentionally designed to inflict harm upon Plaintiff.

59. As a result of the acts of the individual Defendants alleged in the preceding paragraphs, Plaintiff is entitled to punitive damages as to each cause of action.

## JURY DEMAND

60. Plaintiff demands a jury trial as to each Defendant and as to each count.

**WHEREFORE**, Plaintiff requests the following relief:

a. Compensatory damages;

b. Punitive damages;

c. A declaratory judgment that the practices and policies complained of are unconstitutional;

d. Reasonable attorney's fees and costs; and

e. Such other and further relief as appears reasonable and just.

DATED: 4/11/05

*/s/ Michael Pileggi*
MICHAEL PILEGGI, ESQUIRE
437 Chestnut Street, Suite 905
Philadelphia, PA 19106
Counsel for Plaintiff

INVESTIGATION REPORT                                    PHILADELPHIA POLICE DEPARTMENT

| YEAR | DISTRICT OF OCCURRENCE | DC NUMBER | REPORT TYPE INITIAL (49) | Sheet of | DISTRICT | SECTOR |
|---|---|---|---|---|---|---|
| PREVIOUS CLASSIFICATION | | CODE | INVESTIGATING OFFICER | BADGE | PAYROLL | DIST/UNIT PREPARING | CODE | REPORT DATE |
| CLASSIFICATION | | CODE | PLACE OF OCCURRENCE | | J.A.D. INVESTIGATIONS Juvenile Offenders ☐ Male ☐ Female ☐ Adult Offenders |
| COMPLAINANT (USE FIRM NAME) | | | | AGE | RACE WHITE | | SEX MALE |
| COMPLAINANT ADDRESS | | | | | | COMPLAINANT PHONE ###-###-#### |
| TYPE OF PREMISES | DATE REPORTED | TIME REPORTED | REPORTED BY | ADDRESS |
| DATE OF OCCURRENCE | DAY CODE | TIME | FOUNDED ☑ Yes ☐ No | STATUS 1 ☐ Active  2 ☐ Inactive - not cleared  3 ☐ Arrest - cleared  4 ☐ Exceptionally cleared | UNIT 0 |
| STOLEN PROPERTY 1. Currency, Bonds, etc. | | | PROPERTY VALUE $ | RECOVERED VALUE $ | INSURED ☐ Yes ☐ No | OCCURRENCE ☐ Inside ☐ Outside |

## CONTINUATION OF PROBABLE CAUSE FOR SEARCH & SEIZURE WARRANT #111213,111214,111215

On 10/7/03 P/O Reynolds #4268 received information from a reliable confidential informant that Dana Blaylock (PP #799222) & Omar Blaylock (PP #821337) were selling narcotics on the highway at 500 N. 38th St. The CI also stated that the Blaylock's are storing narcotics 522 N. 38th St., 524 N. 38th St., & 3706 Brandywine St. P/O Walker #3730 also received a narcotics complaint about narcotics (crack) being sold outside 524 N. 38th St.

P/O Reynolds #4268 conducted a record check on Omar Blaylock (PP #821337), which revealed he has (6) prior narcotics arrest using the address of 524 N. 38th St. & 3706 Brandywine St.

P/O Reynolds #4268 conducted a record check on Dana Blaylock (PP #799222), which revealed he has (5) prior narcotics arrest using the address of 524 N. 38th St. Dana Blaylock is also registered to vote at 524 N. 38th St.

On 10/7/03 P/O Walker #3730 conducted a surveillance at 500 N. 38th St. Once on location P/O Walker #3730 observed Dana & Omar Blaylock outside 522 N. 38th St.

At approx. 4:10pm P/O Walker #3730 observed an unknown B/M & B/F approach Dana & Omar Blaylock & have a brief conversation. The unknown B/M & B/F then handed Omar Blaylock an undetermined amount of USC. Omar Blaylock then went into 522 N. 38th St, as Dana Blaylock walked to the corner of 38th & Brandywine St. looking in all directions. Omar Blaylock then exited 522 N. 38th St & handed the unknown B/M & B/F small objects. Dana & Omar Blaylock remained outside 522 N. 38th St.

P/O Walker #3730 then observed Omar Blaylock count an undetermined amount of USC & hand the USC to Dana Blaylock who then counted the USC & placed in his pants pocket. Dana Blaylock the walked into then walked east on Brandywine St. & was observed entering 3706 Brandywine St. by P/O Cujdik #1574.

At approx. 4:25pm P/O Cujdik #1574 observed Dana Blaylock exit 3706 Brandywine St. P/O Walker #3730 then observed Dana Blaylock arrive back at 522 N. 38th St. & hand (2) clear plastic bags cont. smaller objects (which P/O Walker #3730 believed to be bundles of narcotics from his experience) to Omar Blaylock. Omar Blaylock then took those clear plastic bags cont. smaller objects into 522 N. 38th St.

At approx. 4:35pm Dana & Omar Blaylock both entered 524 N. 38th St. after someone yelled 5-0

At approx. 4:40pm Dana & Omar Blaylock both exited 524 N. 38th St & remained outside 522 N. 38th St

At approx. 4:45pm P/O Cujdik #1574 met w/ CI & debriefed the CI on making a narcotics at 522 N. 38th St. P/O Cujdik #1574 then searched the CI (negative results) & gave the CI $20.00 PRBM (serial #BE13012755D).

SIGNATURE                                    SIGNATURE

| INVESTIGATION REPORT | | | | PHILADELPHIA POLICE DEPARTMENT | |
|---|---|---|---|---|---|
| YEAR | DISTRICT | DC NUMBER | CONTROL NUMBER | | PAGE 2 |

Once on location P/O Walker #3730 observed the CI met w/ Dana & Omar Blaylock at 522 n. 38th St. & have a brief conversation. The CI then handed Dana Blaylock the $20.00 PRBM, as Omar Blaylock walked into 522 N. 38th St for approx. (45) seconds Omar Blaylock then exited 522 N. 38th St. & handed the CI small objects. The CI then left the area & returned back to P/O Cujdik #1574 turning over (2) red tinted ziplock packets each cont alleged crack cocaine. P/O Cujdik #1574 then searched the CI again (negative results) The CI was always kept under surveillance by either P/O Walker #3730 or P/O Cujdik #1574.

P/O Walker #3730 then conducted a NIK test "G" on one of the purchased items, which positive for the presence of cocaine base. Those items were then placed on PR #2473645.

On the 10/21/03 P/O Walker #3730 met with a CI along with a supervisor where the CI was searched with negative results and give a pre-recorded $20.00.

At approx. 2:30pm P/O Walker#3730 and P/O Cujdik#1574 along with the C/I went to the where P/O Walker #3730 observed the C/I approach (3) b/m's (#1) unknown b/m short hair light beard 5'11 wearing tan shirt and pants (#2) b/m I.D as Omar Blaylock and (#3) b/m I.D as Dana Blaylock standing on the north west corner. P/O Walker#3730 then observed the C/I have a brief conversation with all (3) b/m's when P/O Walker#3730 then observed the C/I give the $20.00 pre-recorded buy money to the unknown b/m wearing the tan shirt and pants in return the unknown b/m went to the lot located on the south side of the 3800 blk of Brandywine st bent down and remove a clear plastic baggie and remove objects for the baggie returning the baggie back to the ground and returning back to the C/I giving the C/I objects. P/O Walker#3730 then observed the unknown b/m give the pre-recorded $20.00 to b/m I D as Omar Blaylock The C/I returned back to P/O Walker#3730 given him (2) red tinted packets containing alleged crack cocaine, which was later tested with Nik Test G by P/O Walker#3730 and placed on (PR#2473692). The C/I was again searched with negative results. The C/I was always in view of P/O Walker from the time the C/I left to the time the C/I returned.

Between the times of 2:35pm and 2:45pm P/O Walker#3730 observed the unknown b/m wearing the tan shirt and tan pants engage in three alleged narcotics transaction with (3) unknown b/m's in which he would receive the unknown amount of usc go over to the lot located on the south side of 3800 Brandywine st and remove items from a clear plastic baggie returning the baggie back to the ground and returning back to the unknown males given the unknown objects. The unknown b/m was then observed given the unknown amount of usc to b/m I.D as Omar Blaylock.

At approx. 2:50PM P/O Walker#3730 observed b/m I.D as Omar Blaylock enter 522 N.38TH with the unknown amount of usc given to him by the unknown b/m wearing the tan shirt and tan pants

At approx. 3:00pm P/O Walker#3730 observed b/m I.D as Dana Blaylock enter 524 N.38th for approx. (1) min. and exiting approaching the unknown b/m wearing the tan shirt and tan pants standing in front of 522 N.38th sta and gave the unk b/m several clear plastic bundles containing unknown objects. The unknown b/m was the observed by P/O Walker#3730 going to the lot located on the south side of 3800 blk of Brandywine st placing the bundles on the ground. P/O Walker#3730 then followed b/m I D as Dana Blaylock to the location 3706 Brandywine St. wear he remained.

Base on the above facts and circumstances, your affiant believes that narcotics(specifically crack cocaine) is being distributed from 522 N.38th st, 524 N 38st. and 3706 Brandywine st and respectfully request a daytime search and seizure warrant

P/O _____ NFU/SOUTH
SIGNATURE OF AFFIANT   BADGE/UNIT

SWORN TO (OR AFFIRMED) BEFORE ME THIS
___ DAY OF OCT  20 03

_____
SIGNATURE OF ISSUING AUTHORITY (SEAL)

## INVESTIGATION REPORT

PHILADELPHIA POLICE DEPARTMENT

| YEAR | DISTRICT OF OCCURANCE | | DC NUMBER | REPORT TYPE | | | | DISTRICT | SECTOR |
|---|---|---|---|---|---|---|---|---|---|
| 3 | 16 | | 42574 | INITIAL (49) | | Sheet 1 of 5 | | 16 | F |
| PREVIOUS CLASSIFICATION | | CODE | INVESTIGATING OFFICER | | BADGE | PAYROLL | DIST/UNIT PREPARING | CODE | REPORT DATE |
| | | | P/O WALKER | | 3730 | 203200 | Narcotics | 7405 | 11/20/03 |
| CLASSIFICATION | | CODE | PLACE OF OCCURRENCE | | | | J.A.D INVESTIGATIONS / Juvenile Offenders | | |
| NARCOTICS | | 1807 | 522 N. 38TH ST. | | | | ☒ Male ☐ Female ☐ Adult Offenders | | |
| COMPLAINANT (USE FIRM NAME) | | | | | | AGE | RACE | | SEX |
| P/O JEFFREY WALKER #3730 | | | | | | 8 | BLACK | | MALE |
| COMPLAINANT ADDRESS | | | | | | | | COMPLAINANT PHONE | |
| 7801 ESSINGTON AVE. | | | | | | | | 215-685-4141 | |
| TYPE OF PREMISES | DATE REPORTED | | TIME REPORTED | REPORTED BY | | | ADDRESS | | |
| 53 | 10/7/03 | | 4:10PM | COMPLAINTANT | | | SAME | | UNIT |
| DATE OF OCCURRENCE | DAY CODE | | TIME | FOUNDED | STATUS | | | | 7405 |
| 10/7/03 | 2 | | 4:10PM | ☒ Yes ☐ No | 1. ☐ Active  2. ☐ Inactive - not cleared | | 3. ☒ Arrest - cleared  4. ☐ Exceptionally cleared | | |
| STOLEN PROPERTY | | | | | | PROPERTY VALUE | RECOVERED VALUE | INSURED | OCCURRENCE |
| 1. Currency, Bonds, etc. | | | | | | $0 | $0 | ☐ Yes ☐ No | ☐ Inside ☒ Outside |

NARCOTICS CONTROL # SF-03-654

NARCOTICS VRT/NFU SOUTH

1. **ORIGIN AND DETAILS OF COMPLAINT:**
   a. ON THE DATE THE BELOW FOLLOWING DEFENDANTS WAS ARRESTED FOR NARCOTICS VIOLATION.
      1. B/M ANDRE BLAYLOCK DOB: 12/23/76 524 N. 38TH ST. U/NAME
      2. B/M DANA BLAYLOCK DOB: 4/7/78 524 N. 38TH ST.
      3. B/M SARKUI WALLACE DOB: 2/11/79 1637 N. DOVER ST.
   b. ASSIGNED OFFICER: P/O WALKER #3730

2. **INTERVIEWS AND INTERROGATIONS:** ON 10/7/03 P/O REYNOLDS #4268 RECEIVED INFORMATION FROM A RELIABLE CONFIDENTIAL INFORMANT THAT DANA BLAYLOCK (PP #799222) & OMAR BLAYLOCK (PP #821337) WERE SELLING NARCOTICS ON THE HIGHWAY AT 500 N. 38TH ST. THE CI ALSO STATED THAT THE BLAYLOCK'S ARE STORING NARCOTICS 522 N. 38TH ST., 524 N. 38TH ST., & 3706 BRANDYWINE ST. P/O WALKER #3730 ALSO RECEIVED A NARCOTICS COMPLAINT ABOUT NARCOTICS (CRACK) BEING SOLD OUTSIDE 524 N. 38TH ST.

P/O REYNOLDS #4268 CONDUCTED A RECORD CHECK ON OMAR BLAYLOCK (PP #821337), WHICH REVEALED HE HAS (6) PRIOR NARCOTICS ARREST USING THE ADDRESS OF 524 N. 38TH ST. & 3706 BRANDYWINE ST.

P/O REYNOLDS #4268 CONDUCTED A RECORD CHECK ON DANA BLAYLOCK (PP #799222), WHICH REVEALED HE HAS (5) PRIOR NARCOTICS ARREST USING THE ADDRESS OF 524 N. 38TH ST. DANA BLAYLOCK IS ALSO REGISTERED TO VOTE AT 524 N. 38TH ST.

ON 10/7/03 P/O WALKER #3730 CONDUCTED A SURVEILLANCE AT 500 N. 38TH ST. ONCE ON LOCATION P/O WALKER #3730 OBSERVED DANA & ANDRE BLAYLOCK OUTSIDE 522 N. 38TH ST.

AT APPROX. 4:10PM P/O WALKER #3730 OBSERVED AN UNKNOWN B/M & B/F APPROACH DANA & ANDRE BLAYLOCK & HAVE A BRIEF CONVERSATION. THE UNKNOWN B/M & B/F THEN HANDED ANDRE BLAYLOCK AN UNDETERMINED AMOUNT OF USC. ANDRE BLAYLOCK THEN WENT INTO 522 N. 38TH ST., AS DANA BLAYLOCK WALKED TO THE CORNER OF 38TH & BRANDYWINE ST. LOOKING IN ALL DIRECTIONS. ANDRE BLAYLOCK THEN EXITED 522 N. 38TH ST. & HANDED THE UNKNOWN B/M & B/F SMALL OBJECTS. DANA & ANDRE BLAYLOCK REMAINED OUTSIDE 522 N. 38TH ST.

| INVESTIGATION REPORT | | | PHILADELPHIA POLICE DEPARTMENT | |
|---|---|---|---|---|
| YEAR | DISTRICT | DC NUMBER | CONTROL NUMBER | PAGE 2 |
| 03 | 16 | 042574 | SF-03-654 | 2 OF 5 |

P/O WALKER #3730 THEN OBSERVED ANDRE BLAYLOCK COUNT AN UNDETERMINED AMOUNT OF USC & HAND THE USC TO DANA BLAYLOCK WHO THEN COUNTED THE USC & PLACED IN HIS PANTS POCKET. DANA BLAYLOCK THE WALKED INTO THEN WALKED EAST ON BRANDYWINE ST. & WAS OBSERVED ENTERING 3706 BRANDYWINE ST. BY P/O CUJDIK #1574.

AT APPROX. 4:25PM P/O CUJDIK #1574 OBSERVED DANA BLAYLOCK EXIT 3706 BRANDYWINE ST. P/O WALKER #3730 THEN OBSERVED DANA BLAYLOCK ARRIVE BACK AT 522 N. 38TH ST. & HAND (2) CLEAR PLASTIC BAGS CONT. SMALLER OBJECTS (WHICH P/O WALKER #3730 BELIEVED TO BE BUNDLES OF NARCOTICS FROM HIS EXPERIENCE) TO ANDRE BLAYLOCK. ANDRE BLAYLOCK THEN TOOK THOSE CLEAR PLASTIC BAGS CONT. SMALLER OBJECTS INTO 522 N. 38TH ST.

AT APPROX. 4:35PM DANA & ANDRE BLAYLOCK BOTH ENTERED 524 N. 38TH ST. AFTER SOMEONE YELLED 5-0.

AT APPROX. 4:40PM DANA & ANDRE BLAYLOCK BOTH EXITED 524 N. 38TH ST. & REMAINED OUTSIDE 522 N. 38TH ST.

AT APPROX. 4:45PM P/O CUJDIK #1574 MET W/ A CI & DEBRIEFED THE CI ON MAKING A NARCOTICS AT 522 N. 38TH ST. P/O CUJDIK #1574 THEN SEARCHED THE CI (NEGATIVE RESULTS) & GAVE THE CI $20.00 PRBM (SERIAL #BE13012755D).

ONCE ON LOCATION P/O WALKER #3730 OBSERVED THE CI MET W/ DANA & ANDRE BLAYLOCK AT 522 N. 38TH ST. & HAVE A BRIEF CONVERSATION. THE CI THEN HANDED DANA BLAYLOCK THE $20.00 PRBM AS ANDRE BLAYLOCK WALKED INTO 522 N. 38TH ST. FOR APPROX. (45) SECONDS. ANDRE BLAYLOCK THEN EXITED 522 N. 38TH ST. & HANDED THE CI SMALL OBJECTS. THE CI THEN LEFT THE AREA & RETURNED BACK TO P/O CUJDIK #1574 TURNING OVER (2) RED TINTED ZIPLOCK PACKETS EACH CONT. ALLEGED CRACK COCAINE. P/O CUJDIK #1574 THEN SEARCHED THE CI AGAIN (NEGATIVE RESULTS). THE CI WAS ALWAYS KEPT UNDER SURVEILLANCE BY EITHER P/O WALKER #3730 OR P/O CUJDIK #1574.

P/O WALKER #3730 THEN CONDUCTED A NIK TEST "G" ON ONE OF THE PURCHASED ITEMS, WHICH POSITIVE FOR THE PRESENCE OF COCAINE BASE. THOSE ITEMS WERE THEN PLACED ON PR #2473645.

ON THE 10/21/03 P/O WALKER#3730 MET WITH A CI ALONG WITH A SUPERVISOR WHERE THE CI WAS SEARCHED WITH NEGATIVE RESULTS AND GIVE A PRE-RECORDED $20.00.

AT APPROX. 2:30PM P/O WALKER#3730 AND P/O CUJDIK#1574 ALONG WITH THE C/I WENT TO 500 N. 38TH ST., WHERE P/O WALKER #3730 OBSERVED THE C/I APPROACH (3) B/M'S (#1) B/M I.D AS SARKUI WALLACE (#2) B/M I.D AS ANDRE BLAYLOCK AND (#3) B/M I.D AS DANA BLAYLOCK STANDING ON THE NORTH WEST CORNER. P/O WALKER#3730 THEN OBSERVED THE C/I HAVE A BRIEF CONVERSATION WITH ALL (3) B/M'S WHEN P/O WALKER#3730 THEN OBSERVED THE C/I GIVE THE $20.00 PRE-RECORDED BUY MONEY TO THE SARKUI WALLACE & RETURN SARKUI WALLACE WENT

| INVESTIGATION REPORT | | | | PHILADELPHIA POLICE DEPARTMENT | |
|---|---|---|---|---|---|
| YEAR | DISTRICT | DC NUMBER | CONTROL NUMBER | PAGE 3 | |
| 03 | 16TH | 042574 | SF-03-654 | 3 OF 3 | |

TO THE LOT LOCATED ON THE SOUTH SIDE OF THE 3800 BLK OF BRANDYWINE ST BENT DOWN AND REMOVE A CLEAR PLASTIC BAGGIE AND REMOVE OBJECTS FOR THE BAGGIE RETURNING THE BAGGIE BACK TO THE GROUND AND RETURNING BACK TO THE C/I GIVING THE C/I OBJECTS. P/O WALKER#3730 THEN OBSERVED THE SARKUI WALLACE GIVE THE PRE-RECORDED $20.00 TO B/M I.D AS ANDRE BLAYLOCK. THE C/I RETURNED BACK TO P/O WALKER#3730 GIVEN HIM (2) RED TINTED PACKETS CONTAINING ALLEGED CRACK COCAINE, WHICH WAS LATER TESTED WITH NIK TEST G BY P/O WALKER#3730 AND PLACED ON (PR#2473692). THE C/I WAS AGAIN SEARCHED WITH NEGATIVE RESULTS. THE C/I WAS ALWAYS IN VIEW OF P/O WALKER FROM THE TIME THE C/I LEFT TO THE TIME THE C/I RETURNED.

BETWEEN THE TIMES OF 2:35PM AND 2:45PM P/O WALKER#3730 OBSERVED SARKUI WALLACE ENGAGE IN THREE ALLEGED NARCOTICS TRANSACTION WITH (3) UNKNOWN B/M'S IN WHICH HE WOULD RECEIVE THE UNKNOWN AMOUNT OF USC GO OVER TO THE LOT LOCATED ON THE SOUTH SIDE OF 3800 BRANDYWINE ST AND REMOVE ITEMS FROM A CLEAR PLASTIC BAGGIE RETURNING THE BAGGIE BACK TO THE GROUND AND RETURNING BACK TO THE UNKNOWN MALES GIVEN THE UNKNOWN OBJECTS. SARKUI WALLACE WAS THEN OBSERVED GIVEN THE UNKNOWN AMOUNT OF USC TO B/M I.D AS ANDRE BLAYLOCK.

AT APPROX. 2:50PM P/O WALKER#3730 OBSERVED B/M I.D AS ANDRE BLAYLOCK ENTER 522 N.38TH WITH THE UNKNOWN AMOUNT OF USC GIVEN TO HIM BY THE UNKNOWN B/M WEARING THE TAN SHIRT AND TAN PANTS.

AT APPROX. 3:00PM P/O WALKER#3730 OBSERVED B/M I.D AS DANA BLAYLOCK ENTER 524 N.38TH FOR APPROX. (1) MIN. AND EXITING APPROACHING SARKUI WALLACE STANDING IN FRONT OF 522 N.38TH ST AND GIVING SARKUI WALLACE SEVERAL CLEAR PLASTIC BUNDLES CONTAINING UNKNOWN OBJECTS. SARKUI WALLACE WAS THEN OBSERVED BY P/O WALKER#3730 GOING TO THE LOT LOCATED ON THE SOUTH SIDE OF 3800 BLK OF BRANDYWINE ST PLACING THE BUNDLES ON THE GROUND. P/O WALKER#3730 THEN FOLLOWED B/M I.D AS DANA BLAYLOCK TO THE LOCATION 3706 BRANDYWINE ST. WEAR HE REMAINED.

P/O WALKER #3730 THEN OBTAINED S&S WARRANTS FOR 522 N. 38TH ST., 524 N. 38TH ST., & 3706 BRANDYWINE ST. ALL WARRANTS WERE APPROVED BY AN ADA & SIGNED BY JUDGE FLEISHCER.

ON 10/23/03 P/O WALKER #3730 MET W/ A CI & DEBRIEFED THE CI ON MAKING A NARCOTICS PURCHASE AT 522 N. 38TH ST. THE CI WAS THEN SEARCHED (NEGATIVE RESULTS) & GIVEN $20.00 PRBM (SERIAL #BB20089438B).

AT APPROX. 6:40PM P/O LICIARDELLO #4383 OBSERVED THE CI MET W/ DANA BLAYLOCK & HAVE A BRIEF CONVERSATION & HAND DANA BLAYLOCK $20.00 PRBM. DANA BLAYLOCK THEN WALKED OVER TO SARKUI WALLACE WHO WAS OUTSIDE 526 N. 38TH ST. & HAVE A BRIEF CONVERSATION. SARKUI WALLACE THEN HANDED DANA BLAYLOCK SMALL OBJECTS THAT HE RETRIEVED FROM A CARDBOARD CONTAINER. DANA BLAYLOCK THEN RETURNED BACK TO THE CI & HANDED THE CI SMALL OBJECTS. THE CI THEN LEFT THE AREA & RETURNED BACK TO P/O WALKER #3730 TURNING OVER (2) RED TINTED ZIPLOCK PACKETS EACH CONT. ALLEGED CRACK COCAINE. P/O WALKER

| INVESTIGATION REPORT | | | | PHILADELPHIA POLICE DEPARTMENT | |
|---|---|---|---|---|---|
| YEAR | DISTRICT | DC NUMBER | CONTROL NUMBER | | PAGE 4 |
| 03 | 16TH | 042574 | SF-03-654 | | 4 OF 4 |

#3730 THEN SEARCHED THE CI AGAIN (NEGATIVE RESULTS). THE CI WAS ALWAYS KEPT UNDER SURVEILLANCE BY P/O WALKER #3730.

AT APPROX. 6:45PM MEMBERS OF NFU-SOUTH VRT WENT TO THE AREA OF 522 N. 38TH ST. P/O LICIARDELLO #4383 ARRESTED DANA BLAYLOCK. RECOVERED FROM HIM WAS $695.00 USC & THE $20.00 PRBM. P/O REYNOLDS #4268 ARRESTED ANDRE BLAYLOCK. RECOVERED FROM HIM WAS $28.00 USC. P/O GALAZKA #7481 ARRESTED SARKU WALLACE INSIDE AT 522 N. 38TH ST. RECOVERED FROM HIM WAS (1) CARDBOARD CONTAINER CONT. (36) RED TINTED ZIPLOCK PACKETS EACH CONT. ALLEGED CRACK COCAINE & $14.00 USC.

MEMBERS OF NFU-SOUTH THEN EXECUTED S&S WARRANT #111213 AT 522 N. 38TH ST. RECOVERED IN THE 2ND FLOOR FRONT BEDROOM WAS (1) CLEAR BAGGIE CONT. NEW & UNUSED RED TINTED ZIPLOCK PACKETS.

MEMBERS OF NFU-SOUTH THEN EXECUTED S&S WARRANT #111214 AT 524 N. 38TH ST. P/O MONAGHAN #6061 RECOVERED FROM THE 2ND FLOOR REAR BEDROOM INSIDE A BIG BIRD DOLL WAS (1) CLEAR BAGGIE CONT. (4) CLEAR BAGGIES EACH TIED IN A KNOT EACH CONT. (40) RED TINTED ZIPLOCK PACKETS EACH CONT. ALLEGED CRACK COCAINE (TOTAL 160 PACKETS) & (2) JAIL HOUSE LETTERS ADDRESSED TO DANA BLAYLOCK W/ THE ADDRESS OF 524 N. 38TH ST.

INSIDE THE 16TH DISTRICT CELL ROOM P/O LICIARDELLO #4383 RECOVERED FROM ANDRE BLAYLOCK WAISTBAND WAS (1) CLEAR

3. **ACTION TAKEN:**
   a. SEARCH WARRANT: 111213,111214
   b. DESCRIBE-EVIDENCE: PR#2473645,2473692,2473695,2473697,2473698,2473699,2473700,2489501,2489502,2489503,2489504
   c. DRUG FIELD TEST RESULTS: P/O WALKER #3730 CONDUCTED A NIK TEST G ON ALL NARCOTICS CONFISCATED WITH POSITIVE RESULTS FOR COCAINE BASE.
   d. DESCRIPTION OF CRIME SCENE: 522 N. 38TH ST.
   e. APPREHENSION: N/A
   f. RECORD CHECK: NO WARRANTS
   g. LABORATORY USER FEE REQUESTED: YES
4. **REMARKS:**
   a. RULES OF DISCOVERY: N/A.
   b. WEATHER CONDITIONS: CLEAR.
   c. STREET VALUE OF DRUGS: $2,010.00
   d. CHARGES: N1316M,N1330F,N1332M,903F
   e. CLASSIFICATION: CLASS IV.
   f. JOINT INVESTIGATION: N/A.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE BLAYLOCK<br>      Plaintiff<br>vs.<br>THE CITY OF PHILADELPHIA, PHILADELPHIA POLICE OFFICER REYNOLDS, BADGE # 4268; PHILADELPHIA POLICE OFFICER WALKER, BADGE # 3730; PHILADELPHIA POLICE OFFICER CUJDIK, BADGE # 1574; PHILADELPHIA POLICE OFFICER LICIARDELLO, BADGE # 4383; PHILADELPHIA POLICE SERGEANT: MALKOWSKI, BADGE # 8832, PHILADELPHIA POLICE OFFICER DOES 1-5, BADGE NUMBERS UNKNOWN, individually and in their capacity as police officers<br>      Defendants | JURY TRIAL DEMAND<br><br>C.A. #05- |

### CERTIFICATION OF SERVICE

Michael Pileggi, Esquire, counsel for the plaintiff in the above matter, hereby certifies that he served a copy of Plaintiff's Complaint in the above matter, upon the following parties, by letter dated April 11, 2005, mailed by first class, postage prepaid, to the following address:

Sheila Riggs, Claims Coordinator
One Parkway, 1515 Arch Street
15th Floor
Philadelphia, PA 19102-1595
Counsel for Defendants

*Michael Pileggi*
Michael Pileggi, Esquire
437 Chestnut Street, Suite 905
Philadelphia, PA 19106
215-627-8516