IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDRE BLAYLOCK** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **PHILADELPHIA POLICE OFFICERS** | : | |
| **REYNOLDS, WALKER, CUJDIK,** | : | |
| **LICIARDELLO and MALKOWKSI** | : | NO. 05-1649 |

**Norma L. Shapiro, S.J.**                                                                          June 6, 2006

### MEMORANDUM & ORDER

In this civil rights action brought under 42 U.S.C. § 1983, plaintiff, Andre Blaylock, alleges defendants, Philadelphia police officers Reynolds, Walker, Cujdik, Liciardello and Malkowksi, violated plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff alleges that the officers falsified an affidavit of probable cause and a post-arrest investigation report, arrested him without probable cause, used excessive force in arresting him, and misrepresented facts in order to support inflated criminal charges, resulting in approximately 16 months of incarceration prior to the dismissal of the action against him.

At the close of discovery, defendants moved for summary judgment, claiming failure of proof on all claims and qualified immunity on the false arrest claim. After a hearing and oral argument, defendant's motion was denied for the reasons stated on the record at the hearing. The court found plaintiff had set forth sufficient proof to withstand summary judgment and the officers were not entitled to qualified immunity. A memorandum explaining the court's rationale

did not accompany the order because of recent experience with these issues in similar cases.[1]

The following day, defendants filed a notice of appeal on the court's denial of qualified immunity. This memorandum is in support of the May 18, 2006 order, now on interlocutory appeal, as to qualified immunity for false arrest only. See Local Appellate Rule 3.1.

The historical facts critical to qualified immunity remain in dispute and preclude summary judgment.

## I.     Factual Allegations

Many of the facts in this action, and most of the critical ones, are disputed.[2] The parties do agree on the following basic facts: (1) plaintiff was arrested by defendants on October 22, 2003 at or near 522 North 38th Street in Philadelphia; (2) plaintiff, then in possession of $28.00, was taken into custody and remained incarcerated at various facilities for several months; (3) plaintiff was charged by the District Attorney with various crimes, including simple possession

---

[1] Similar suits have been brought against this group, or a substantially similar group, of defendants in four other actions before the undersigned in which a qualified immunity defense was raised unsuccessfully. See Brian Randall v. Reynolds, et al., C.A. 04-3983, 2005 WL 3111826 (E.D. Pa. Nov. 18, 2005) (order denying motion for summary judgment on the basis of qualified immunity); Juanita Randall v. Reynolds, et al., C.A. 04-5392, order at docket no. 23 (E.D. Pa. Nov. 17, 2005) (same); Coulter v. Reynolds, et al., C.A. 04-4924, 2005 WL 3111785 (E.D. Pa. Nov. 17, 2005) (same), Parker v. Reynolds, et al., C.A. 04-6064, 2005 WL 3111811 (E.D. Pa. Nov. 17, 2005) (same). Counsel representing defendants in the present action also represented defendants in the related actions.

[2] Defendants have failed to narrow the factual issues throughout this litigation. In their answer, defendants admit to only one of the 60 paragraphs in plaintiff's second amended complaint, the operative complaint in this action. Of the remaining 59 paragraphs, defendants deny 53 of them without any explanation or qualification, including many paragraphs adopting facts verbatim from Officer Walker's affidavit of probable cause (Ex. A to Defs.' Br.), the very document that forms the basis for defendants' proposed stipulated facts in their pretrial memoranda. Discovery did not resolve these factual disputes, as defendants provide a long list of disputed facts in their supplemental pretrial memorandum, many of which relate to qualified immunity analysis. See Defs.' Supp. Pretrial Mem. at 5-6.

of narcotics, possession of narcotics with intent to deliver, possession of paraphernalia, and conspiracy; and (4) all charges against plaintiff were dropped on or around February 2, 2005.

### A. Plaintiff's Allegations

Plaintiff argues defendants: (1) knowingly arrested him, or contributed to his arrest, without probable cause; (2) fabricated facts afterwards, or contributed to the fabrication, in order to justify their actions and inflate the charges against plaintiff; and (3) physically abused him during and after his arrest.[3]  In support, plaintiff avers the following facts:[4]

On October 7, 2003, Officer Reynolds received a tip that Dana and Omar Blaylock, relatives of defendant, were conducting drug transactions at the 500 block of North 38th Street in Philadelphia.  Ex. 2 (Walker's affidavit of probable cause) to Pl.'s Br. at 1.  Reynolds conveyed this information to Officer Walker and conducted a records check of Dana and Omar Blaylock. Id.  Walker set up surveillance and observed Dana Blaylock and another black male participate in numerous drug transactions at 522 North 38th Street.  Id. at 1-2.  Walker conveyed his observations to Officer Cujdik, who set up a controlled narcotics purchase.  Id.  A confidential informant gave prerecorded buy money to Dana Blaylock in exchange for two plastic baggies of

---

[3]   Plaintiff inartfully combines his claims into one count, captioned "federal civil rights violation," in which he asserts three distinct claims under the Fourth and Fourteenth Amendments: (1) false arrest; (2) malicious prosecution; and (3) excessive force.  Second Am. Compl. ¶¶ 46-56.  Plaintiff also asserts a claim for retaliation under the First Amendment, Second Am. Compl. ¶¶ 47 and 56, but plaintiff's counsel stated at oral argument that only the false arrest, malicious prosecution and excessive force claims were being pursued.  See 4/26/06 Hr'g Tr. at 10.  Plaintiff has presented no evidence in support of his retaliation claim.

[4]   This factual summary is compiled from plaintiff's second amended complaint, amended pretrial memorandum, opposition to defendants' motion for summary judgment, and the statements of plaintiff's counsel at the 4/26/06 hearing.  Important facts that are supported by record evidence are noted.

3

crack cocaine provided by Dana Blaylock's accomplice. Id. Three weeks later, on October 21, 2003, Walker and Cujdik met with the same informant to set up another controlled purchase, which again was made from Dana Blaylock's accomplice. Id. at 2. Walker obtained police photographs of Dana and Omar Blaylock to confirm their identities as the men Walker had observed making the drug sales. Ex. 1 (Walker Dep.) to Pl.'s Br. at 99-105. After doing so, Walker memorialized his observations in an affidavit of probable cause. Id. at 120-21; Ex. 2 to Pl.'s Br.. Based on the information in his affidavit, Walker obtained search warrants for various properties, including 522 North 38th Street. Ex. 4 (post-arrest investigation report) to Pl.'s Br. at 4.[5]

On October 22, 2003, plaintiff was arrested while sitting on the steps of 522 North 38th

---

[5] At some point between October 7, 2003 and October 21, 2003, Walker discovered that Omar Blaylock was in fact incarcerated at the time of the first surveillance. Ex. 1 (Walker Dep.) to Pl.'s Br. at 121. Nevertheless, Walker executed an affidavit of probable cause which made multiple references to observations of Omar Blaylock, even though Walker knew at that time Omar Blaylock was incarcerated. Compare Id. (Walker Dep.) at 115-21, with Ex. 2 (Walker's affidavit of probable cause) to Pl.'s Br. at 1-2.

Neither party attempts to explain why Walker might have done this. Walker's testimony at the non-jury trial in Rosser v. Reynolds, et al., C.A. 05-514 (E.D. Pa. Sept. 19, 2005) (M.J. Hart) sheds some light on his thinking: "I didn't believe [plaintiff] was in custody, I thought it was a mistake in the system. I based this affidavit on my observation, and I strongly believed that was Omar at the time when I made my observations." Trial Tr. at 1-126. But Walker's prior testimony in plaintiff's criminal proceedings confuses the matter. At the suppression hearing, when asked, "you know it couldn't have been Omar, because you knew Omar was in jail, because the record check reflected that, right?," Walker answered, "[t]hat's correct." Ex. 7 (2/2/05 Hr'g Tr.) to Pl.'s Br. at 40. Further, when asked if "you or one of your brother or sister officers told Judge Fleisher [sic] that Omar Blaylock was in jail at the time that it's purported that he was out there making these drug transactions," Walker answered, "[n]o." Id. at 42. At one point, Walker was asked, "did you know what Omar looked like . . . [k]new him to see him?," to which he answered, "[y]es," id. at 37, yet, moments later, Walker admitted, "[t]o me, looking at them [Omar Blaylock and plaintiff], they both look alike to me," id. at 50. Indeed, Judge Ransom, presiding over the hearing, found Walker's testimony to be "incredible" and granted the defense's motion to suppress, resulting in a *nolle prosequi*. Id. at 82.

Street.  Id. at 1.  The arresting officers (Reynolds, Walker and Liciardello, each of whom signed the post-arrest investigation report) confiscated $28.00 in cash from plaintiff but did not confiscate any illegal drugs or paraphernalia.  Id.  Plaintiff was arrested even though he did not possess anything incriminating at the time and had not been previously observed selling or possessing drugs.  See Second Am. Compl. ¶ 40.  Despite never resisting arrest, plaintiff was thrown to the ground, handcuffed, and kicked and punched in the face.  See Second Am. Compl. ¶¶ 19 and 32; Ex. 5 (plaintiff's emergency room treatment chart) to Pl.'s Br. at 2-5 (detailing plaintiff's "contusions [to his] face [and] back" due to an "alleged assault [with] fists" on October 22, 2003).[6]  Plaintiff was thereafter incarcerated for several months on various narcotics charges, all of which were eventually dropped by the District Attorney.  See Def.'s Supp. Pretrial Mem. at 4, ¶¶ 22 and 23; Ex. 7 (suppression hearing transcript) to Pl.'s Br. at 82.

Plaintiff alleges Walker knowingly arrested him without probable cause and intentionally falsified the post-arrest investigation report to justify the criminal action against plaintiff.  See Second Am. Compl. ¶ 40.  Plaintiff points out that the post-arrest investigation report detailing the surveillance conducted prior to plaintiff's arrest is essentially a mirror image of Walker's affidavit of probable cause, except that Omar Blaylock's name has been replaced by plaintiff's throughout.  Pl.'s Am. Pretrial Mem. at 3.  Plaintiff points out that Walker made these alterations even though he had previously confirmed the identity of Omar Blaylock with a police photograph.  Ex. 1 (Walker Dep.) to Pl.'s Br. at 99-105.  Plaintiff alleges he could not have been

---

[6] At oral argument, defense counsel denied the authenticity of plaintiff's hospital records, but asserted no basis for this belief.  See 4/26/06 Hr'g Tr. at 13.  Although plaintiff has failed to submit an affidavit certifying the authenticity of his medical records, the court can not conclude at this time that the hospital records are not authentic.  Id. at 13-15.

involved in the October 21, 2003 drug transactions, as described in the post-arrest investigation report, because he was attending a financial aid appointment at the Aviation Institute of Maintenance ("AIM") at the time.  See Pl.'s Br. at 6.  A signed letter from the AIM admissions director to plaintiff's criminal defense counsel confirms plaintiff's presence at AIM on October 21, 2003.  Ex. 6 to Pl.'s Br..

Plaintiff alleges he is a victim of a conspiracy by each of the defendants to violate his constitutional rights: (1) Walker, who orchestrated plaintiff's arrest and prosecution and falsified the post-arrest investigation report; (2) Cujdik, who assisted Walker with surveillance and failed to correct Walker's subsequent misrepresentations; (3) Reynolds and Liciardello, who assisted with plaintiff's false arrest, used excessive force in doing so, and signed the falsified post-arrest investigation report; and (4) Sergeant Malkowksi, who, as the officers' supervisor, failed to prevent their unconstitutional conduct or remedy the consequences resulting from it.  See Second Am. Compl. ¶ 41; Ex. 1 (Walker Dep.) to Pl.'s Br. at 121 (discussing Walker's interaction with Malkowski); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995) (supervising officer may be held liable for violating plaintiff's Fourth Amendment rights if had knowledge of and acquiesced to his subordinates' violations).

### B. Defendants' Allegations

Defendants agree with most of plaintiff's factual allegations to the extent they are drawn from Walker's affidavit of probable cause.  However, for facts falling outside the scope of the affidavit, defendants' version of what actually transpired is strikingly different from plaintiff's version.  These differences raise issues of material fact relevant to qualified immunity that are for

6

the jury.  Defendants aver the following facts:[7]

Reynolds received a tip from a reliable informant that Dana and Omar Blaylock were selling drugs on the 500 block of North 38th Street.  Walker also received a complaint that drugs were being sold outside 524 North 38th Street.  Reynolds' records check for Dana and Omar Blaylock revealed prior narcotics arrests.  On October 7, 2003 and October 21, 2003, Walker and Cujdik set up surveillance and controlled buys on the 500 block of North 38th Street and observed Dana Blaylock and plaintiff selling drugs.  At the time, Walker believed he was observing Omar Blaylock when in fact he was observing plaintiff.  Ex. 1 (Walker Aff.) to Defs.' Br. ¶ 4.  Walker had previously seen a police photograph of Omar Blaylock, whom he claims looks very similar to plaintiff.  See Ex. B (police photographs of Omar Blaylock and plaintiff) to Defs.' Br.; Ex. C (Walker Dep.) to Defs.' Br. at 109.

Walker memorialized his observations in an affidavit of probable cause, which included Omar Blaylock's name instead of plaintiff's because of a reasonable mistaken identification.  Ex. C (Walker Dep.) to Defs.' Br. at 129.  On October 22, 2003, Walker obtained search and seizure warrants approved by an assistant district attorney and signed by Judge Fleischer.  That same day, members of the Narcotics Field Unit South – including Reynolds, Walker and Liciardello – executed the warrants and arrested Dana Blaylock, plaintiff, and another individual on the 500 block of North 38th Street for narcotics violations.

Reynolds first detained and handcuffed plaintiff because he was at a location, 524 North 38th Street, where a search warrant was being executed.  Defs.' Br. at 9; Ex. 3 (Reynolds Aff.) to

---

[7] This factual summary is compiled from defendants' pretrial memoranda, motion for summary judgment, and the statements of defense counsel at the 4/26/06 hearing.  Important facts that are supported by record evidence are noted if they were not noted in part A, supra.

Defs.' Br. ¶¶ 2 and 3.  Plaintiff was not placed under arrest until Walker arrived on the scene and identified plaintiff as one of the men he had seen selling drugs during surveillance on October 7th and 21st.  Defs.' Br. at 9-10; Ex. 3 (Reynolds Aff.) to Defs.' Br. ¶ 4.  Excessive force was not used on plaintiff during his arrest or detention.  See Ex. 3 (Reynolds Aff.) to Defs.' Br. ¶¶ 3 and 5; Ex. 4 (Liciardello Aff.) to Defs.' Br. ¶ 4.  Later, inside a 16th District jail cell, Liciardello searched plaintiff's person and discovered material believed to be crack cocaine.  Ex. 4 (Liciardello Aff.) to Defs.' Br. ¶¶ 2 and 3.

Defendants' assert that Walker filed the post-arrest investigation report substituting plaintiff's name for Omar Blaylock's merely to correct his reasonable mistaken identification; he was not misrepresenting facts in order to deprive plaintiff of his constitutional rights.  See Defs.' Br. at 10-11; Defs.' Supp. Pretrial Mem. at 5.

**II.     Legal Standards**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which bear upon the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable factual inferences must be made in a light most favorable to the nonmoving party.  Id. at 255.  However, the nonmoving party bears the burden to establish the existence of each element of his case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor.  Anderson, 477 U.S. at 248; Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000).  Summary judgment should be

granted if no reasonable trier of fact could find for the non-moving party. Radich v. Goode, 886 F.2d 1391, 1395 (3d Cir. 1989).

Government officials performing discretionary functions are shielded from liability for damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is the defendants' burden to establish they are entitled to qualified immunity. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A two-step analysis is used to evaluate whether a police officer is protected by qualified immunity. First, the court must determine whether the alleged facts, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); In re City of Phila. Litig., 49 F.3d 945, 961 (3d Cir. 1995). The qualified immunity analysis comes to an end, and the officer is entitled to immunity, "[i]f no constitutional right would have been violated were the allegations established." Saucier, 533 U.S. at 201-02; see also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001). However, if a "violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established," i.e., "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201; see also Kornegay v. Cottingham, 120 F.3d 392, 395-96 (3d Cir. 1997). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

Malley v. Briggs, 475 U.S. 335, 341 (1986).[8]

As qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), "a ruling on that issue should be made early in the proceedings." Saucier, 533 U.S. at 200; see also Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (noting that qualified immunity is effectively lost if a case is erroneously permitted to proceed to trial). There is a tension between ruling on qualified immunity early in the proceedings and refraining from granting summary judgment when material facts remain in dispute. See, e.g., Grant v. Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996). A ruling on qualified immunity "will be premature where there are unresolved disputes of historical fact relevant to the immunity analysis." Curley, 298 F.3d at 278; see also Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination."). In affirming the denial of a summary judgment motion based on qualified immunity, our Court of Appeals recently held that "[m]otive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

A defendant whose summary judgment motion based on qualified immunity is denied prior to trial may take an immediate interlocutory appeal. Forbes v. Twp. of Lower Merion, 313 F.3d 144, 147 (3d Cir. 2002). But this right to interlocutory review is limited:

---

[8] When multiple police officers jointly file a motion for summary judgment on the grounds of qualified immunity, the court should either: (1) "address each [police officer's] request for immunity on an individual basis;" or (2) "explain why the [police officers] should be considered collectively." United Artists Theatre Circuit v. Twp. of Warrington, No. 00-1064, 2000 U.S. App. LEXIS 38737, at * 4 (3d Cir. Nov. 29, 2000) (unreported decision).

> [The court of appeals] may "review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right," but [the appellate court] may not "consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." Ziccardi v. City of Phila., 288 F.3d 57, 61 (3d Cir. 2002). When a defendant argues that a trial judge erred in denying a qualified-immunity summary-judgment motion because the judge was mistaken as to the facts that are subject to genuine dispute, the defendant's argument cannot be entertained under the collateral-order doctrine but must instead await an appeal at the conclusion of the case. See Johnson v. Jones, 515 U.S. 304, 313-16 (1995).

Forbes, 313 F.3d at 147-48; see also Schieber v. City of Phila., 320 F.3d 409, 415 (3d Cir. 2003) ("We have no jurisdiction . . . in an interlocutory appeal to review a District Court's determination that there is sufficient record evidence to support a set of facts under which there would be no immunity.")

### III. Discussion

To prevail in his § 1983 action, plaintiff must establish that a state actor, acting under the color of state law, engaged in conduct that deprived him of a constitutional right. 42 U.S.C. § 1983; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Plaintiff has alleged three constitutional torts under the Fourth and Fourteenth Amendments: (1) false arrest; (2) malicious prosecution; and (3) excessive force. Defendants have asserted qualified immunity on the false arrest claim only. The court considers: (1) whether plaintiff has alleged facts supported by the record demonstrating false arrest; and, if so, (2) whether the constitutional right to be free from false arrest was clearly established when the violation allegedly occurred. Because historical facts critical to qualified immunity remain in dispute, defendants' summary judgment motion on the basis of qualified immunity was denied without prejudice to a motion for qualified immunity at the conclusion of trial.

Plaintiff's false arrest claim is comprised of two separate but related theories; the second,

11

more general theory encompasses the first, more specific one.  First, plaintiff argues that Walker falsified the affidavit of probable cause supporting the search and seizure warrant issued by Judge Fleischer.  Plaintiff argues this fact alone proves his false arrest.  Second, plaintiff makes the broader, alternative argument that he was simply arrested without probable cause.

In order to succeed under his first theory of false arrest, plaintiff must show: "(1) that the police officer[s] 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements and omissions are material, or necessary, to the finding of probable cause.'"  Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).

Plaintiff has alleged facts supported by the record showing that Walker knowingly or recklessly made false statements in applying for the search and seizure warrant.  Walker admitted that he had discovered Omar Blaylock was incarcerated at the time of the first surveillance.  Ex. 1 (Walker Dep.) to Pl.'s Br. at 121.  Nevertheless, Walker executed an affidavit stating that Omar Blaylock was selling drugs at that time even though Walker knew it was likely this statement was false.  See supra note 5.  But this falsification (i.e., the use of Omar Blaylock's name, instead of the phrase "an unknown black male") was not material to finding probable cause to issue the warrant or arrest plaintiff.  Plaintiff was not arrested because his name was improperly included in the affidavit of probable cause; rather, plaintiff was arrested because Walker allegedly recognized him as the man he had previously observed selling drugs with Dana Blaylock at the 500 block of North 38th Street.  If plaintiff's false arrest claim is to succeed, it must be based on something more than the misrepresentation in Walker's affidavit.

In order to succeed under his second theory of false arrest, plaintiff must show that Walker and the other defendants unreasonably arrested him without probable cause. "'Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" Wilson, 212 F.3d at 789 (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)). To be "sufficient," these "facts and circumstances" must be "reasonably trustworthy." Hunter v. Bryant, 502 U.S. 224, 228 (1991). Plaintiff is entitled to civil damages for an arrest if "'no reasonable competent officer' would conclude that probable cause exists." Wilson, 212 F.3d at 789-90 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Plaintiff has alleged sufficient facts supported by the record to suggest that Walker and the other defendants arrested him without a reasonable belief that probable cause to arrest was present. The confidential informant who tipped off Reynolds, as well as the complainant who described drug transactions on the 500 block of North 38th Street, never identified plaintiff prior to his arrest. There has been no testimony that Cujdik, who accompanied Walker on the October 7th and 21st surveillance operations, ever identified plaintiff as the other man selling drugs with Dana Blaylock. Plaintiff was never identified by any of the other arresting officers as someone who was or had been involved in narcotic transactions. Finally, plaintiff's name was absent from Walker's affidavit of probable cause.

The only basis set forth by defendants for arresting plaintiff is that Walker mistakenly identified him in his affidavit as Omar Blaylock, and that Walker recognized plaintiff as Dana Blaylock's accomplice when he approached him during the October 23rd raid. But the

13

trustworthiness of Walker's observation is questionable and should be determined by a jury. At the motion to suppress hearing in plaintiff's criminal action, Walker testified that he had seen a photograph of Omar Blaylock prior to executing the affidavit of probable cause and that he recognized him by sight as the person selling drugs on 38th Street with Dana Blaylock. See supra note 5. But during the same hearing Walker admitted, "[t]o me, looking at them [Omar Blaylock and plaintiff], they both look alike to me." Ex. 7 (2/2/05 Hr'g Tr.) to Pl.'s Br. at 50. Walker also testified that has was "45 to 50 feet" away from Dana Blaylock and his accomplice when he was conducting surveillance. Id. at 45. Judge Ransom, presiding over the hearing, found Walker's testimony "incredible" and granted the defense's motion to suppress, resulting in a *nolle prosequi*. Id. at 82.

Having determined that plaintiff has alleged sufficient facts supported by record evidence to suggest defendants arrested him without a reasonable belief that probable cause existed to do so, the next question relevant to qualified immunity is whether the probable cause standard was clearly established at the time of plaintiff's arrest. It is obvious that: (1) the requirements for a lawful arrest under the Fourth Amendment, i.e., the probable cause standard, were very well-established at the time of plaintiff's arrest; and (2) a reasonable police officer would have been well aware of the standard at that time. See Hunter v. Bryant, 502 U.S. 224, 228 (1991); Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975); Beck v. Ohio, 379 U.S. 89, 91 (1964); Brinegar v. United States, 338 U.S. 160, 175-76 (1949).

Defendants do not argue that the probable cause standard was not clearly established at the time of plaintiff's arrest; they argue Walker had a reasonable good faith belief, even if a mistaken one, regarding the existence of probable cause. Defendants cite two Supreme Court

14

cases to support this argument:  Hill v. California, 401 U.S. 797, 802-04 (1971) (arrest of wrong person was reasonable where officers had good faith belief, supported by objective evidence, that arrestee was suspect they were searching for) and Hunter v. Bryant, 502 U.S. at 227 ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.") (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

      Determining the officers' "good faith," as that term is used in Hill v. California, is akin to determining their intent, or motive, and our Court of Appeals has recently held that, in the context of a summary judgment motion based on qualified immunity, "[m]otive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor."  Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006);[9] see also Mitchell v. Forsyth, 472 U.S. 511, 529 (1985) (improper intent is a pure question of fact).  Plaintiff and defendants have both set forth facts supported by record evidence suggesting two different motives: plaintiff alleges defendants arrested plaintiff while fully aware that no probable cause existed to do so; defendants allege they were genuinely and reasonably mistaken as to plaintiff's identity.[10]  This is a fact question for the jury.

---

[9] But see Judge Fisher's lengthy dissent criticizing the majority's rule because it seems to conflate the merits analysis with the qualified immunity analysis.  Monteiro, 436 F.3d at 407 ("The majority characterizes the jury's finding of improper intent as the dispositive inquiry in assessing both the existence of a constitutional violation and entitlement to qualified immunity.").

[10] Plaintiff alleges he was mistaken for the unknown black male selling drugs with Dana Blaylock on the 500 block of North 38th Street.  Plaintiff asserts he could not have been observed by Walker and Cujdik on October 21, 2003 because he was elsewhere at that time.  See Ex. 6 (signed letter from AIM admissions director to plaintiff's criminal defense counsel confirming plaintiff's presence at AIM during the second day of surveillance).  Defendants contest plaintiff's alibi – they contend he was in fact selling drugs with Dana Blaylock on

(continued...)

Determining the "objective reasonableness" of the officers' mistake, as that term is used in Hunter v. Bryant, is also a fact question for the jury, as it requires the jury to consider, among other things, whether Omar Blaylock's police photograph, or the unknown black male selling drugs with Dana Blaylock, looked like plaintiff at the time of his arrest. Plaintiff suggests they did not look alike (no immunity); defendants suggest they looked very similar (immunity). While both Omar and Andre Blaylock are young black men who had short hair at the time their police photographs were taken, their photographs reveal notably different facial features. See Ex. B (police photographs of Omar and Andre Blaylock) to Defs.' Br.. Furthermore, defendants have failed to introduce evidence relating to the physical characteristics of the unknown black male Walker and Cujdik had observed during surveillance. Without this evidence, it is impossible to determine at this stage whether it was objectively reasonable for Walker to mistake plaintiff for the unknown black male he had observed. These fact questions for the jury are incapable of resolution by summary judgment.

Such a conclusion is not foreclosed by Hunter v. Bryant. See Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997) ("We do not suggest that there may never be instances where resort to a jury is appropriate in deciding the qualified immunity issue."); accord Lampkin v. City of Nacogdoches, 7 F.3d 430, 435 (5th Cir. 1993) ("It must be recognized that even though [Hunter v.] Bryant diminished the jury's role in qualified immunity cases, it did not entirely abolish it."). In Curley v. Klem, our Court of Appeals explained how a district court might proceed when facts critical to qualified immunity remain in dispute after the close of discovery:

---

[10](...continued)
October 21st – but accept it as true for the purpose of summary judgment. See Defs.' Br. at 16-17.

> We addressed the issue in Sharrar, in which we observed that the "reasonableness of the officers' beliefs or actions is not a jury question,"128 F.3d at 828, but qualified that observation by later noting that a jury can evaluate objective reasonableness when relevant factual issues are in dispute, id. at 830-31. This is not to say, however, that it would be inappropriate for a judge to decide the objective reasonableness issue once all the historical facts are no longer in dispute. A judge may use special jury interrogatories, for instance, to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity.

298 F.3d at 279. The court will tailor the jury interrogatories to resolve the fact issues relevant to qualified immunity so that it may be decided by the court after trial.

Defendants' summary judgment motion for qualified immunity on the false arrest claim was denied because of fact issues relating to both defendants' subjective motive when arresting plaintiff and the objective reasonableness of their mistaken belief that probable cause existed to arrest him. Because the record shows the actions of all five defendants are inextricably intertwined, the court has considered defendants collectively for the purpose of their summary judgment motion on qualified immunity. See United Artists Theatre Circuit v. Twp. of Warrington, No. 00-1064, 2000 U.S. App. LEXIS 38737, at * 4 (3d Cir. Nov. 29, 2000) (unreported decision) (when multiple police officers jointly file a motion for summary judgment on the grounds of qualified immunity, the court should either: (1) "address each [police officer's] request for immunity on an individual basis;" or (2) "explain why the [police officers] should be considered collectively"). Although Walker is the central figure of plaintiff's false arrest claim, the claim is against each defendant; plaintiff alleges he is a victim of a conspiracy[11] to violate his

---

[11] The alleged conspiracy includes each defendant: (1) Walker, who orchestrated plaintiff's arrest and prosecution, made misrepresentations in his affidavit of probable cause, and falsified the post-arrest investigation report; (2) Cujdik, who assisted Walker with surveillance and failed to correct Walker's subsequent misrepresentations; (3) Reynolds and Liciardello, who assisted with plaintiff's false arrest, used excessive force in doing so, and signed the falsified
(continued...)

constitutional rights.  Second Am. Compl. ¶ 41.

Even if the court were to consider each defendant individually, none would be entitled to qualified immunity on plaintiff's false arrest claim:

Reynolds and Liciardello assisted Walker with plaintiff's arrest and signed the post-arrest investigation report incorporating the affidavit's surveillance observations but substituting plaintiff's name for Omar Blaylock's.  Reynolds and Liciardello claim to be entitled to qualified immunity under Rogers v. Powell because they reasonably relied on Walker's statements that probable cause existed to arrest plaintiff.  120 F.3d 446, 455 (3d Cir. 1997) (qualified immunity available in such a situation, "provided it was objectively reasonable . . . to believe, on the basis of the statements, that probable cause for the arrest existed").  In Rogers, qualified immunity was denied where the relied-upon statements "merely related rumors that were circulating about Rogers," but immunity was granted where the statements "unambiguously related the existence of an arrest warrant for Rogers."  Id. at 455-57.  The exact contents of Walker's statements to Reynolds and Liciardello are unclear.  It is clear, however, that the search and seizure warrant executed by Walker, Reynolds and Liciardello named Omar Blaylock, not plaintiff.  The court is unable to conclude that, on these facts, it was objectively reasonable for Reynolds and Liciardello to rely on Walker's statements.  Reynolds and Liciardello are not entitled to qualified immunity at this time.

Cujdik and Malkowski sought summary judgment based on failure of proof, not qualified immunity.  Defs.' Br. at 21.  The court need not discuss its denial of summary judgment for

---

[11](...continued)
post-arrest investigation report; and (4) Sergeant Malkowksi, who, as the officers' supervisor, failed to prevent their unconstitutional conduct or remedy the consequences resulting from it.

Cujdik and Malkowksi because failure of proof is not an issue on this interlocutory appeal.

**IV.     Conclusion**

Historical facts critical to defendants' qualified immunity defense to plaintiff's false arrest claim remain in dispute and preclude summary judgment. For this reason, defendants' summary judgment motion on the basis of qualified immunity was denied without prejudice to a motion for qualified immunity at the conclusion of trial. An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDRE BLAYLOCK** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **PHILADELPHIA POLICE OFFICERS** | : | |
| **REYNOLDS, WALKER, CUJDIK,** | : | |
| **LICIARDELLO and MALKOWKSI** | : | **NO. 05-1649** |

## ORDER

AND NOW, this 6th day of June, 2006, it is **ORDERED** that the foregoing memorandum and this order shall be filed in accordance with Local Appellate Rule 3.1. Copies of this memorandum and order shall be provided to counsel for each party and to the Clerk of the Court of Appeals for the Third Circuit (Appeal No. 06-2785) **FORTHWITH**.

/s/ Norma L. Shapiro
Norma L. Shapiro, S.J.

Copies sent via email and regular mail on 6/6/06 to:

Michael Pileggi, Esq.
Richard G. Tuttle, Esq.
Jeffrey Kolanksy, Esq.
Jared B. Shafer, Esq.

Copy delivered 6/6/06 to:

Clerk of Court, Third Circuit Court of Appeals

By: _____